ROBERT M. S. PUTNAM, Respondent, *v.* LINCOLN SAFE DEPOSIT COMPANY et al., Respondents, and HARRY P. PENDRICK, as Administrator with the Will Annexed of MARY S. PUTNAM, Deceased, et al., Appellants.

1. APPEAL — APPELLATE DIVISION HAS NO POWER TO DETERMINE CONTROVERTED QUESTIONS OF FACT — IMPROPER MODIFICATION. The power conferred upon the Appellate Division to modify a judgment upon appeal is improperly exercised when, upon different views of, or inferences from, the facts in evidence, it determines the controverted questions for itself, incorporates such determination in its order and renders final judgment accordingly, since it has no power to determine controverted questions of fact and to render final judgment upon such determination, it being a court of review possessing no other power, when it reverses a party's recovery, than to order a new trial, where the questions of fact may be tried out anew. Where, therefore, in an action upon disputed facts to trace trust property, final judgment is entered upon a decision of the trial court, formulated in findings of fact and conclusions of law, charging the estate of the trustee and the estate of the life beneficiary as trustee *de son tort* with a deficiency, and, on appeal, the Appellate Divi-

sion so modifies the judgment appealed from as to constitute a new deter-
mination of the facts affecting the whole of such judgment and in effect
reversing it upon the facts, the order and judgment of modification will
be reversed.

2. WILL — VALID EXPRESS TRUST. A foreign will, by the provisions
of which the testator appoints his son-in-law to be trustee for his daugh-
ter and directs that all property given by his will to her shall "pass to
and be managed by my said son-in-law for the benefit of my daughter
\* \* \* and her children," and that upon her death "all of said property
and her share in my estate shall pass to and become the property of her
children," and further providing for a division of his residuary estate
equally among his children or their lineal heirs "subject to the restric-
tions and limitations hereinbefore provided," creates a valid trust, under
the laws of this state, for the benefit of the daughter during her life, with
remainder to her children, since there is contained in such provisions all
that is essential to the constitution of a valid express trust, viz., a trustee
and an estate given to the trustee to have and to manage for the benefit
of a beneficiary named, during her life, with remainder to persons
designated.

3. LIMITATION OF ACTIONS — WHEN STATUTE NOT A BAR TO ACTION BY
REMAINDERMEN TO RECOVER TRUST PROPERTIES FROM ESTATE OF LIFE
BENEFICIARY — ESTOPPEL. The Statute of Limitations is not available, to
the representatives of the estate of a life beneficiary, as a bar to an action
by remaindermen for the recovery of trust properties or their proceeds
which were in the possession of the life beneficiary six, or ten, years
before the commencement of the action, where the cause of action did not
accrue in favor of the remaindermen until the death of the life bene-
ficiary, where they had no right to the possession of the property sought
to be recovered until that event occurred, and it does not appear that they
had any knowledge of the acts of the life beneficiary in connection with
the trust estate prior to the commencement of the action; especially where
the life beneficiary never acted in hostility to the trust, but while acknowl-
edging its existence and validity had so intermeddled with the possession,
management and disposition of the trust estate as to bring herself under
a like liability with the trustee with respect to what she had taken into her
possession and to constitute herself, by her acts, a trustee *de son tort* of
the trust properties and, therefore, to estop herself and the representa-
tives of her estate from denying an equal and continuous accountability
with the trustee when called upon to account by those entitled to assert
claims to the estate.

4. EVIDENCE — UNSIGNED WRITTEN MEMORANDUM — WHEN COMPE-
TENT AS DECLARATION AGAINST INTEREST — WHEN INCOMPETENT AS
HEARSAY. An unsigned written memorandum or statement prepared by
or for the trustee of an express trust and indorsed "Inventory, etc.— In re
Will of R. M. Shoemaker, deceased," parts of which were in the handwriting

of the trustee, and appears to have been made in the last year of his life and to be a statement among other things of the property received by him, of what was on hand and of what had been substituted for that which had been converted, is admissible, in an action to charge the estate of the trustee and that of the life beneficiary as trustee *de son tort* with a deficiency, as evidence against the trustee's estate, it being a declaration against his interest; but, with reference to the estate of the life beneficiary, in the absence of evidence that she ever saw or had knowledge of the paper, it is nothing more than hearsay, and incompetent.

*Putnam* v. *Lincoln Safe Deposit Co.*, 118 App. Div. 468, reversed.

(Argued January 27, 1908; decided February 18, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 18, 1907, which modified and affirmed as modified a judgment of Special Term construing the will of Robert M. Shoemaker, deceased, and settling the accounts of the trustee of a portion of his estate.

The facts, so far as material, are stated in the opinion.

*James W. Verbeck, Harry P. Pendrick* and *Corliss Sheldon* for appellants. It is error for the Appellate Division to make findings of fact. That power rests exclusively with the trial tribunal. (*Cutter* v. *G. Bros. Co.*, 168 N. Y. 512; *Purchase* v. *Matteson*, 25 N. Y. 211; *Matter of Chapman*, 162 N. Y. 465; *Levin* v. *Dietz*, 106 App. Div. 208.) The Appellate Division had no power to reverse that part of the judgment of the trial court which awarded certain securities to these appellants, and then render an affirmative judgment in favor of the plaintiff for the same securities; nor had the Appellate Division any power, under the pretense of "modifying" it, to add to and increase the amount of the money judgment awarded by the trial court to the plaintiff against these appellants; nor to award a judgment in favor of plaintiff against these appellants for a sum of money which the trial court expressly found that the appellants were not bound to pay. In either of these cases the Appellate Division only had power to reverse and grant a new trial so that additional evidence could be offered if desired. (*Dayton* v. *Parke*, 142

N. Y. 391; *Heller* v. *Cohen*, 154 N. Y. 299; *Matter of Chapman*, 162 N. Y. 456; *McHugh* v. *N. Y. El. R. Co.*, 19 N. Y. Supp. 744; *Brockman* v. *Buell*, 9 N. Y. Supp. 895; *Kingsly* v. *City of Brooklyn*, 5 Abb. [N. C.] 1; *McNulty* v. *M. M. El. L. Co.*, 172 N. Y. 410; *Lopez* v. *Campbell*, 163 N. Y. 340; *Ross* v. *Caywood*, 162 N. Y. 259.)    The judgment of the Appellate Division was unauthorized in law. (*Heller* v. *Cohen*, 154 N. Y. 299; *McNulty* v. *M. M. El. L. Co.*, 172 N. Y. 410; *Lopez* v. *Campbell*, 163 N. Y. 340; *Ross* v. *Caywood*, 162 N. Y. 259; *Van Beuren* v. *Wotherspoon*, 164 N. Y. 368; *Whitehead* v. *Kennedy*, 69 N. Y. 462; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Cuff* v. *Dorland*, 57 N. Y. 560; *Goodsell* v. *W. U. T. Co.*, 109 N. Y. 147; *Sanger* v. *French*, 157 N. Y. 213.)    Before private property can be taken for a trust, it is absolutely essential that trust funds shall be definitely traced into such property. (*Matter of Hicks*, 170 N. Y. 195; *F. L. & T. Co.* v. *Pendleton*, 179 N. Y. 486; *Ferris* v. *Van Vechten*, 73 N. Y. 113; *Hatch* v. *Nat. Bank*, 147 N. Y. 184; *Lowery* v. *Erskine*, 113 N. Y. 52; *Wagner* v. *Grimm*, 169 N. Y. 421; *Gannon* v. *McGuire*, 160 N. Y. 476.)    The trial court properly found that no recovery could be had from Mary S. Putnam for improvements to "Putnam Place," and the Appellate Division erred in reversing that determination. (*Borst* v. *Corey*, 15 N. Y. 505; *Ferris* v. *Van Vechten*, 73 N. Y. 113; *Hatch* v. *Nat. Bank*, 147 N. Y. 184.)    On July 1, 1899, Mary S. Putnam gave her note for $36,987 to John R. Putnam as trustee, which was in full settlement for all transactions which had existed between them, up to that date, as they then stood as shown by the securities themselves. It must be presumed in law that the giving of this note was the final culmination of all transactions occurring between Mary S. Putnam and John R. Putnam, trustee. (*Lake* v. *Tysen*, 6 N. Y. 461; *Proctor* v. *Soulier*, 8 App. Div. 69; *Matter of Callister*, 153 N. Y. 294; *Wright* v. *Wright*, 74 Hun, 138; *Dimmers* v. *Armitage*, 33 App. Div. 627; *Adams* v. *Olin*, 140 N. Y. 150; *Van Slooter* v. *Wheeler*, 140 N. Y. 624; *Walbaum* v. *Heaney*, 104 App. Div. 412.)

The Statute of Limitations is an absolute bar to the recovery of the property herein mentioned. (*Butler* v. *Johnson*, 111 N. Y. 204; *Schutz* v. *Morette*, 146 N. Y. 137; *Adams* v. *Fassett*, 149 N. Y. 61; *Engle* v. *Fisher*, 102 N. Y. 400; *Gilmore* v. *Ham*, 142 N. Y. 1; *Dunning* v. *O. Nat. Bank*, 61 N. Y. 497; *Matter of Straut*, 126 N. Y. 201; *W. R. R. Co*; v. *Nolan*, 48 N. Y. 513; *Bracken* v. *A. T. Co.*, 36 App. Div. 67; Code Civ. Pro. § 449; *Stevens* v. *Melcher*, 152 N. Y. 551.)   There was no valid trust estate in John R. Putnam as to the share bequeathed to his wife; his was simply a discretionary power of management of his wife's property for her benefit; and for the benefit of her lineal descendants only in the event of her death within two years after her father's. (*Ridgway* v. *Munkittrick*, 1 D. & W. 89; *Cook* v. *Cook*, 2 Vern. 546; *Goodright* v. *Dunham*, Doug. 255; *Greene* v. *Greene*, 125 N. Y. 506; *Brown* v. *Spohr*, 180 N. Y. 201; *Matter of Tienkin*, 131 N. Y. 391; *Mullarky* v. *Sullivan*, 136 N. Y. 227; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Moore* v. *Lyons*, 25 Wend. 119; *Stokes* v. *Weston*, 142 N. Y. 433.)

*Albert Stickney* for plaintiff, respondent.   Mrs. Putnam, by taking joint possession and control of the trust property, became trustee *de son tort*, and as such subject to all the disabilities and liabilities of the office. (Perry on Trusts, § 245; *La Fort* v. *Delafield*, 3 Edw. Ch. 32; *Anderson* v. *Daley*, 38 App. Div. 505; *F. Nat. Bank* v. *N. B. Bank*, 156 N. Y. 459.)   The schedule received in evidence in the trial court only against Judge Putnam's representatives should also have been admitted in evidence against Mrs. Putnam of all the facts stated therein. (Greenl. on Ev. [16th ed.] § 147; *Lyon* v. *Ricker*, 141 N. Y. 225; *C. B. Co.* v. *Paige*, 83 N. Y. 178; *Bump* v. *Pratt*, 84 Hun, 201; *Livingston* v. *Arnoux*, 56 N. Y. 507; *Matter of Woodward*, 69 App. Div. 286; *White* v. *Chouteau*, 10 Barb. 202; *Russell* v. *Southard*, 12 How. [U. S.] 159; *Deas* v. *Thorne*, 3 Johns. 543; *Trustees* v. *Nicoll*, 3 Johns. 594; *Bloodgood* v. *Clark*, 4 Paige, 574;

*Studwell* v. *Palmer*, 5 Paige, 166.)   The Statute of Limitations would not have been available as a defense to Mrs. Putnam, even if she had pleaded it in her own original answer.   Much less can it be deemed a defense when set up for the first time by an administrator with the will annexed five years after the commencement of the action. (*Decouche* v. *Savetier*, 3 Johns. Ch. 190 ; *Zebley* v. *F. L. & T. Co.*, 139 N. Y. 461.)

*Edgar T. Brackett, George R. Salisbury* and *Nash Rockwood* for defendants, respondents.   The will of Robert M. Shoemaker created a valid trust. (*Jeffers* v. *Lamson*, 10 Ohio St. 101 ; *Pruden* v. *Pruden*, 14 Ohio St. 251 ; *Howe* v. *Miller*, 19 Ohio St. 51 ; *Stepleton* v. *Ellison*, 21 Ohio St. 337 ; *Houston* v. *Craighead*, 23 Ohio St. 198 ; *Linton* v. *Laycock*, 33 Ohio St. 128 ; *Posegate* v. *South*, 46 Ohio St. 391 ; *Smith* v. *Bell*, 6 Pet. 68 ; *Brant* v. *V. C. & I. Co.*, 93 U. S. 336 ; *Guiles* v. *Little*, 104 U. S. 291 : *Howland* v. *Clendenin*, 134 N. Y. 305.)   Under the circumstances of this case the burden of proof was upon the personal representatives of Judge and Mrs. Putnam to show beyond doubt that the securities which are now claimed to be the personal property of Mary Steiner Putnam were purchased with her own moneys. (*Ward* v. *Armstrong*, 84 Ill. 151 ; *Englar* v. *Offutt*, 70 Md. 78 ; *Durling* v. *Hammer*, 20 N. J. Eq. 220 ; *Hawthorne* v. *Brown*, 3 Sneed, 562 ; *Pugh* v. *Pugh*, 9 Ind. 132 ; *Monroe* v. *Collins*, 95 Mo. 33 ; *Woodruff* v. *Boyden*, 3 Abb. [N. C.] 29 ; *Kellett* v. *Rathbun*, 4 Paige, 102 ; *C. Nat. Bank* v. *C. M. L. Ins. Co.*, 104 U. S. 54 ; *Baker* v. *N. Y. N. E. Bank*, 110 N. Y. 31.)   The Statute of Limitations has no application to the facts of this case. (*Gilbert* v. *Taylor*, 148 N. Y. 305 ; *Jordan* v. *Woodin*, 93 Iowa, 453 ; *Prince* v. *Fogler*, 182 Ill. 76 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90 ; *Bennett* v. *Garlock*, 79 N. Y. 320 ; *Carshore* v. *Huyck*, 6 Barb. 583 ; *Stevens* v. *Lord*, 84 Hun, 353 ; *Denise* v. *Denise*, 110 N. Y. 562 ; *Matter of Strickland*, 2 Connolly, 10.)   The remaindermen have the right in this action to follow the trust property and reach it wherever

it may be found. (*C. Nat. Bank* v. *C. N. L. Ins. Co.*, 104
U. S. 54 ; *Cavin* v. *Gleason*, 105 N. Y. 256 ; *Matter of Hicks*,
170 N. Y. 198 ; *Holmes* v. *Gilman*, 138 N. Y. 369 ; *Smith* v.
*Irvin*, 45 Misc. Rep. 262 ; *Haddon* v. *Lundy*, 59 N. Y. 320 ;
*Schryock* v. *Waggoner*, 28 Penn. St. 430 ; *Bennett* v. *Mer-
ritt*, 6 Jones Eq. 59 ; *Matter of Steinway*, 37 Misc. Rep.
304.) The Appellate Division had the power to affirm,
reverse or modify the judgment of the Trial Term in accord-
ance with the facts. This power has not been exceeded.
(*Snyder* v. *Seaman*, 157 N. Y. 449 ; *Ross* v. *Caywood*, 162
N. Y. 259 ; *Lopez* v. *Campbell*, 163 N. Y. 340 ; *Dixon* v.
*James*, 181 N. Y. 129.) It was proper to hold the estate
of Judge Putnam liable for losses resulting from the unlaw-
ful detention of securities in which a trustee could not legally
invest. (*Matter of Keteltas*, 1 Connolly, 468 ; *King* v. *Tal-
bot*, 40 N. Y. 76 ; *Matter of Cant*, 5 Dem. 270 ; *White* v.
*Sherman*, 168 Ill. 589 ; *Morris* v. *Wallace*, 3 Penn. St. 319 ;
*Ackerman* v. *Emott*, 4 Barb. 626 ; *Adair* v. *Brinnier*, 74
N. Y. 539 ; *Worrell's Appeal*, 23 Penn. St. 44 ; *Hemphill's
Appeal*, 18 Penn. St. 303 ; *Ihmsen's Appeal*, 43. Penn. St.
431 ; *Bartol's Estate*, 182 Penn. St. 407.)

GRAY, J. The plaintiff, one of the remaindermen under
the will of Robert M. Shoemaker, who died a resident of the
city of Cincinnati, in the state of Ohio, in 1885, commenced
this action, in 1900, to procure the appointment of a substi-
tuted trustee to execute the trust created by the 18th clause
of the will, to have determined the rights and interests in the
trust of himself and of the others affected thereby, and to
have certain appropriate and incidental equitable relief. The
will of Shoemaker, after making certain provisions, which are
not now important, in the 18th clause, provided for the
appointment of his " son in-law, John R. Putnam, as trustee
for his wife, my (testator's) daughter, Mary," and read as fol-
lows : " It is my will and direction that all moneys, rents and
property of whatever kind, under or by authority of this will,
advanced, paid to or devised to my daughter, Mary, shall

subject to the provisions of this will, as to the management
of my estate by my executors, pass to and be managed by my
said son-in-law, John R. Putnam, at his discretion, for the
benefit of my said daughter, Mary, and her children, including
the lineal descendants of any deceased child, and upon the
death of my said daughter all of said property and her share
in my estate shall pass to and become the property of her
children, including the lineal descendants of any deceased
child, taking *per stirpes* share and share alike." In the 21st
clause, the will provided that the residuary estate should be held
by the executors " as the property of the estate entire " for the
period of two years, dividing meanwhile, equally, the net income
among the testator's five children, or his surviving children and
the children of any deceased child, " and then, at the expira-
tion of two years after my decease all the property, real and
personal, belonging to my estate, and not in this will other-
wise disposed of, and subject to the restrictions and limita-
tions hereinbefore provided, shall be divided, or if sold, the
property or proceeds of sale be divided equally among my
five children, share and share alike, or their lineal heirs, such
heir or heirs taking only the share his, her, or their parent
would have taken if alive. Provided that all the bequests
and conditions of this item are and shall be subject to the
bequests, limitations and conditions of this will as to each of
my children." The testator had, also, created another trust
in the share of the estate given to one of his sons, for the
benefit of " the son and of his wife," with remainder upon their
deaths to their children. The plaintiff and the defendants,
John R. and Israel Putnam, are the only children of testa-
tor's daughter, Mary. He left three sons and two daughters,
and he appointed his sons to be the executors of the will.
After the probate of the will in Ohio, the executors brought
an action in that state for its construction and they joined as
defendants, among others, this plaintiff, his brothers and their
parents, John R. and Mary S. Putnam ; all of whom appeared,
individually or by guardians, and answered. The action
resulted in a final decree, which, so far as it is of importance

at present, adjudged that the share of Mary Putnam in the residuary estate, given by the 21st clause of the will, was "to be held in trust by her husband, John R. Putnam, in accordance with the terms of the 18th item of said will and to devolve on the death of said Mary Putnam as in the said 18th item specified." An appeal from the decree was not prosecuted by the Putnams. John R. Putnam, appointed in the will as trustee for his wife and their children, died in 1899 and then this action was instituted. In 1900, the plaintiff's mother, who had been made a defendant in the action, died, leaving all of her property, except a small bequest, to her son, the defendant Israel Putnam. In consequence of her death and of subsequent proceedings relating to her estate and the execution of her will, changes were necessitated in this action in the addition of new parties defendant and in the service of supplemental pleadings; until, finally, the action was brought to an issue between the plaintiff and parties defendant, who represented the plaintiff's two brothers, the estates of Mary Putnam and John R. Putnam, the trustee, and the Lincoln Safe Deposit Company, where the estate securities had been kept. The answers of the representatives of the two estates and of the plaintiff's brother Israel Putnam denied the creation of any trust by the provisions of Shoemaker's will and any liability on the part of Mary Putnam's, or of her husband's, John R. Putnam's, estate to account, or to make discovery, as to the property constituting the estate devised to the testator's daughter, Mary Putnam. The latter's representative, an administrator with will annexed, also, pleaded in bar of any recovery against her estate the provisions of the Statute of Limitations. The defendant, plaintiff's brother John R. Putnam, joined in the prayer for judgment contained in the complaint. A trial at Special Term resulted in an interlocutory judgment, which, in effect, upheld the trust and adjudged that the plaintiff and his two brothers, upon the death of their mother, Mary Putnam, became the absolute owners, as tenants in common, of all of the estate devised, or bequeathed, by Shoemaker's will to her, or to John R. Putnam in trust for

them, under the 18th clause of the will. A reference was ordered to state the accounts " of all the parties, one with another, and with each other, of all the assets and property constituting a part, or representing the proceeds, of the property devised and bequeathed " under the 18th and 21st clauses of the will and affected by the action, and to investigate into the nature, extent and disposition thereof. The interlocutory judgment was affirmed by the Appellate Division. Thereafter, a report by the referee was confirmed; but the order of confirmation was reversed by the Appellate Division, for error in the admission of certain evidence, and a new hearing was ordered to be had of the matters directed to be tried by the interlocutory judgment. The new hearing came on at Special Term; where, upon a decision, formulated in findings of fact and conclusions of law, a final judgment was entered; which adjudged, specifically, the several rights and interests of the plaintiff and of his brothers to and in various assets of the trust estate, and determined the respective liabilities of the estates of John R. Putnam, the trustee, and of his wife, Mary, with respect to certain securities and to claims made against them for the use and disposition of the proceeds of others. As to some of the claims against the estate of Mary Putnam, it was adjudged that they were barred by the Statute of Limitations. Appeals were taken by all the parties, plaintiff and defendants, to the Appellate Division; where the judgment was ordered to be " modified both upon the law and the facts as hereinafter set forth and, as so modified, affirmed both upon the law and the facts." The order, in the form in which it was made, was unanimous upon all questions, except as to one item of a charge against Mrs. Putnam's estate; for, contrary to usual practice, the written dissent of Mr. Justice COCHRANE as to such item was incorporated in the order and, also, in the judgment, which followed, in all details, the order. As to all other questions involved, Justice COCHRANE therein expressed his agreement with the court. If, therefore, it were possible for us to regard this determination of the Appellate Division, as expressed in both order and judgment,

as a mere modification of the judgment of the trial court, this court, being precluded from reviewing all questions of fact in the case, could affirm the same. But the difficulty with the disposition made by the Appellate Division is that it is an unqualified reversal of material parts of the judgment directed by the trial court upon its findings as to disputed questions of fact. The power conferred upon the Appellate Division to modify a judgment, upon appeal, is improperly exercised, when, upon different views of, or inferences from, the facts in evidence, it determines the controverted questions for itself, incorporates such determination in its order and renders final judgment accordingly. This, precisely, has been done in this case. In the guise of what are termed modifications upon the facts, the Appellate Division has made, and has inserted in its order and judgment, new statements, or what are, really, findings, of facts, which are contrary to findings made upon the trial and which, very seriously, affect the result. This was an error which affects the whole of the original judgment and requires that we reverse the determination below. This was not a case where the facts were undisputed; it was one where it was sought to establish a liability upon facts showing confusion, or commingling, of trust moneys. It was sought to trace them and the proceeds of particular securities, and it was claimed that Mrs. Putnam, the life beneficiary, had so intermeddled with the trust property as to invest herself with the full and continuing responsibility of a trustee *de son tort.*

A brief reference to the material features of the case will illustrate the issues tried. It was found that the executors of Shoemaker's will delivered to John R. Putnam, as trustee, securities and cash of the par value of $176,490.65. Of these securities, $104,600 had been transferred to Mrs. Putnam. After the death of the trustee, there were found to be missing cash and securities to the amount of $100,290.75, leaving on hand securities amounting to $76,200 in value. Of these securities on hand, $33,300 were in the trustee's name, or payable to bearer, and $42,900 stood in Mrs. Putnam's name. Deducting from the $104,600 in par value of the securities,

which had been transferred to her, the $42,900, which still were on hand and in her name, left to be accounted for $61,700, in par value. These, it was found, she had sold for $68,410. There were received from Shoemaker's executors, in addition to the securities of the value mentioned, certain stocks of foreign corporations, which came into Mrs. Putnam's possession and were realized upon by her. Certain other stocks of foreign corporations had become worthless. It was found that the income from the securities delivered over by Shoemaker's executors to the trustee, whether standing in his, or in her, name, had been deposited in a bank account kept in the name of "John R. or Mary S. Putnam." The trial court made the finding of fact that Mrs. Putnam was cognizant of the trust created by her father's will and that she had received the securities, which she had disposed of, for the purposes of the trust.

Without further reference to the facts found, it suffices to observe that the endeavor of the trial court was to trace the trust property, from the time of its receipt by the trustee and Mrs. Putnam, through its mutations, and to discover, where converted, in what form it could be identified as a product, or fruit, of that property. The investigation into the facts led the court to conclude, and to adjudge, that the estate of Mrs. Putnam was the owner of certain of the securities claimed to be the product of the trust property; that it was liable for certain other securities, or for their proceeds; that it was protected by the Statute of Limitations from a liability to account for the proceeds of certain other securities and that a note which she had made to "John R. Putnam as trustee under the will of R. M. Shoemaker, or to his successor in office," for $36,987, payable "on the day following my decease," could not be recovered upon, because it would be "a duplication of the amount" charged against her. The trustee's estate was held to be liable, jointly with Mrs. Putnam's estate, for the use made by her of the trust properties and it was charged with the sum of $24,610.75, representing the balance of securities and cash received by him and not on hand and a loss of

$5,750, on certain stocks of foreign corporations " occasioned by his neglect." An equal apportionment was made between the plaintiff and his two brothers of the trust securities and moneys on hand, found to belong to the trust estate, and of the amounts for which the respective estates of the trustee and of Mrs. Putnam were chargeable. The final judgment, specifically, adjudged, in paragraphs, following the formal decision, as to certain designated securities, either, that they, or the proceeds thereof, belonged to the estate of Mrs. Putnam, or that any recovery for the same was barred · by the statute ; that for certain other designated securities, or for the proceeds thereof, her estate was liable and that it was not liable upon her note. The judgment, in like specific form, adjudged, also following the formal decision, that the trustee's estate was liable, jointly with Mrs. Putnam's estate, for the proceeds of the securities sold by her, for the value of the missing securities received by him and for the amount of the loss on others. The Appellate Division ordered, and the judgment thereon entered followed the terms of the order, that the judgment of the trial court should be modified, so that certain paragraphs thereof should read as therein set forth. The trial court had found that certain shares of stock of the Delaware & Hudson Canal Company and of the Central Railroad of New Jersey had not been purchased with trust funds and the judgment adjudged that they, and the income received therefrom, belonged to Mrs. Putnam's estate. The modification by the Appellate Division was to the effect, and this and each other modification were formulated with the fullness and preciseness of a finding, that they had " become part of the trust estate held in trust " etc. It had been found that certain shares of stock of the Augusta factory, a portion of the original trust estate, had been realized upon by Mrs. Putnam and that any claim therefor was barred by the statute. The judgment adjudged accordingly. The modification by the Appellate Division's order was that the shares had " constituted a part of the trust estate " and that the plaintiff and his brothers were entitled to receive the same and the income received

upon the same, in equal third parts. It had been found
that the sum of $7,091, proceeding from sales of trust securi-
ties, had been expended for improvements upon Mrs. Putnam's
property, known as " Putnam Place " ; but it was adjudged that
any recovery therefor was barred by the statute. The modifica-
tion ordered by the Appellate Division was that the plaintiff
and his brothers were entitled to recover the sum, with inter-
est, from both estates. The order of the Appellate Division
contained the statement that the Statute of Limitations was
not a bar " to the recovery of any of the trust property men-
tioned in the decision and final judgment." It had been
found that the note of Mrs. Putnam for $36,987.00, made to
the order of the trustee, as such, was given " as an evidence
of her indebtedness to the payee for property received by her
which belonged to said payee," but not for the full amount
of her indebtedness ; but the judgment adjudged that no
recovery could be had upon it, as it " would be a duplication
of the amount which is charged against her." The modifica-
tion ordered by the Appellate Division was that the plaintiff
and his two brothers were entitled to receive the amount of
the note from Mrs. Putnam's estate, with interest. A pre-
ceding statement, or a finding, in the order of the Appellate
Division was that the proceeds of the sale by Mrs. Putnam
of a portion of the securities, which she had received from
her father's executors, had been, in part, used "in the pur-
chase of new securities now on hand    *    *    *    part of the
trust estate and the estate of Mary S. Putnam deceased is not
liable    *    *    *    for the proceeds of such sales other than
for the amount of her note hereinafter mentioned." The judg-
ment had been, upon the finding that she had realized upon
the trust securities, that her estate must respond to the full
amount and that the note had represented a part of it. It
had been adjudged below that John R. Putnam's estate was
liable for the sum of $24,610.25, as the balance of the securi-
ties and cash received by him, but not on hand. The modi-
fication by the Appellate Division order was that the trustee's
estate was liable for the $5,750, lost through his neglect, and

for $6,822.75, the balance of such securities and cash received by him, or $12,037.50 less than charged by the trial court.

It must be quite plain that these modifications, so called, made by the Appellate Division constitute a new determination of the facts. Whether the shares of stock mentioned were, or were not, purchased from trust funds; whether Mrs. Putnam's note represented the balance of her indebtedness to the trust estate, upon her sales of trust securities, after crediting her with other securities on hand as having been purchased from the proceeds of the sales; whether the trustee's estate was liable for a balance of $24,610.25, or for a different amount; these were questions of fact to be determined upon the evidence. If the Statute of Limitations was applicable in bar of the plaintiff's claims, its application might, also, turn upon the existence of certain facts showing when Mrs. Putnam became accountable for any of the trust property. As I have suggested, the effect of the Appellate Division's order was to reverse upon the facts. The final judgment, as ordered by that court, affected the whole judgment appealed from; inasmuch as it very largely increased the recovery by plaintiff and his brother, John, as against the estate of their mother and, to the extent of that increase, affected the interests of the other brother, Israel, the sole legatee under her will. We have had occasion to examine the power of the Appellate Division to determine for itself facts not conceded, or conclusively established, and to direct judgment thereupon. Such a power has not been conferred by the statute. We have condemned the practice of the Appellate Division in stating findings, or conclusions; or of modifying a judgment, and affirming the same with the modifications, when the modifications were, in practical effect, a reversal of the trial court. Questions of fact are to be tried and determined in a court of original jurisdiction and it is not within the jurisdiction of the appellate court to determine controverted questions of fact and to render final judgment upon such determination. The Appellate Division is a court of review and it possesses no other power, when it reverses a party's recovery, than to

order a new trial, where the questions of fact may be tried out anew. (*Benedict* v. *Arnoux*, 154 N. Y. 715, 724; *In re Chapman*, 162 ib. 456; *Lopez* v. *Campbell*, 163 ib. 340; *Van Beuren* v. *Wotherspoon*, 164 ib. 368, 377; *Cutter* v. *Gudebrod Brothers Co.*, 168 ib. 512; *N. Y. Bank Note Co.* v. *Hamilton Bank Note Co.*, 180 ib. 280, 290.)

In *Matter of Chapman*, (*supra*), the appeal to the Appellate Division was from a judicial settlement of the accounts of the committee of an incompetent person and that court assumed to correct an erroneous charge by modifying the order in that respect and then affirming it as modified. We held "that the Appellate Division had no authority, after practically reversing the action of the referee and Special Term, to thus determine the case. Instead of deciding it upon an assumption of facts and conditions not proved, it should have remitted it to the court below for a readjustment of the account. That the learned Appellate Division had no authority to pursue the course adopted is well settled by the authorities in this court."

In *N. Y. Bank Note Co.* v. *Hamilton Bank Note Co.*, (*supra*), we reversed the judgment for a similar error in practice and ordered a new trial; because "the Appellate Division not only reversed a finding of fact, as it was authorized to do, but made a finding of fact to the contrary and modified the interlocutory judgment so as to accord with the new finding." We held that "this the Appellate Division had no authority to do, but should have ordered a new trial to which the defendants were clearly entitled. In this respect the practice in this case before us has been substantially the same as that condemned in our decision in *Van Beuren* v. *Wotherspoon*, (164 N. Y. 368)." If the power could be conceded to the Appellate Division to act upon the judgment of the trial court, as it did in this case, this court would be placed in the position of having to review the questions of fact and to decide which determination made by the courts below as to them was correct. This would be quite beyond its province, as prescribed by the Constitution and the statute.

I am of the opinion that the Appellate Division, having practically reversed the action of the Special Term, did not have the power to proceed to determine the case as it did and should have sent it back for a retrial of the issues. We should, therefore, reverse the order and judgment and there should be a new trial. While such a disposition of the case is required, in order that this litigation may the more speedily end, I think it well to indicate our views upon certain legal questions, which the courts have considered and which are of controlling importance.

I think that the will of Shoemaker created a valid trust for the benefit of his daughter, Mrs. Putnam, during her life. It was declared to be valid under the laws of Ohio, where the testator had resided and died, by the decree of the court in that state. It was, also, valid under the laws of this state. The informal language, in which the intention to create a trust is expressed, is of no importance. No particular form of words is necessary to that end, when the intention is clear. (*Morse* v. *Morse*, 85 N. Y. 53, 60.) By the 18th clause of the will, hereinbefore quoted, the testator appoints his son in-law, John R. Putnam, to be trustee for his daughter, and directs that all property given by his will to her shall "pass to and be managed by my said son-in-law for the benefit of my daughter, Mary, and her children." It provides that, upon her death, "all of said property and her share in my estate shall pass to and become the property of her children etc." Then, by the 21st clause, he directs that his residuary estate, two years after his decease, should be divided by his executors, equally, among his five children, or their lineal heirs, "subject to the restrictions and limitations hereinbefore provided" and, also, "provided that all the bequests and conditions of this item are and shall be subject to the bequests, limitations and conditions of this will as to each of my said children." The 18th clause created the trust and the 21st clause specified the estate which was to be held in trust. We have in these provisions of the two clauses all that is essential to the constitution of a valid express trust: a trustee and an estate

given to the trustee to have and to manage for the benefit of a beneficiary named during her life ; with remainder to persons designated.   While the latter, or 21st, clause of the will, apparently, gives an absolute estate to each child, it is to be controlled by the intention, clearly enough expressed theretofore, that, as to his daughter, Mrs. Putnam, (and, in fact, such a provision had been made as to a son in the 17th clause), title to her share was not to vest in her, but in a trustee for her.   The intention that she should take but a beneficial interest in the share of the residuary estate is emphasized in the declaration of the 18th clause that upon her death " *all of said property and her share in my estate shall pass to and become the property of her children*" etc.

It is argued on behalf of Mrs. Putnam's estate that, as to some of the claims made against it, the Statute of Limitations has barred a recovery ; inasmuch as she is found to have received the trust properties questioned six, or ten, years before the commencement of this action.   Although Mrs. Putnam was made a party defendant, in her lifetime, she interposed no such defense.   Nor was it interposed by her executor, who was brought in after her death.   The bar of the statute was first pleaded by the defendant, the administrator with her will annexed, some five years later ; when, the executor having died, he was brought into the action.   The Appellate Division held the statute to be inapplicable to such a case ; relying upon the authority of *Gilbert* v. *Taylor*, (148 N. Y. 298).   I think the court decided correctly.   In two aspects of the facts, the statute seems unavailable as a defense to a claim for the return of the trust property converted by Mrs. Putnam, or for its proceeds.   The cause of action, which the plaintiff seeks to enforce, did not accrue in his favor as a remainderman until the death of his mother, the life' beneficiary.   Upon her death, the action became one for the recovery of trust properties, or their proceeds, which were in her possession, by those persons to whom Shoemaker's will had given the trust estate in that event. They had no right to its possession until that event occurred.

Nor does it appear that they had any knowledge of the acts of Mrs. Putnam, in connection with the trust estate, before the commencement of this action. Time could not run against them, until they could be charged with actual knowledge of the facts upon which their right depended. (Code Civ. Proc. sec. 401, sub. 1.) In *Gilbert* v. *Taylor*, (*supra*), the remainder-man, upon the death of the life beneficiary of a fund, sued the residuary legatee, to whom, during the trust term, the residuary estate, which was charged with the payment of the income of the fund, had been paid over. It was held that, although the legacy to the plaintiff had vested at testator's death, the Statute of Limitations afforded no defense to the action; inasmuch as the legacy did not become payable until the death of the life beneficiary. But, in the next place, it is clear that Mrs. Putnam had assumed such an attitude towards the remaindermen, with regard to the trust estate, as to make the plea of the statute unavailable to the representatives of her estate. She never acted in hostility to the trust; but, to the contrary, had acknowledged its existence and validity. She appeared in the Ohio action, where the trust was upheld. Upon Shoemaker's executors delivering over to the trustee, the trust properties, some of them were put in her name, some in the trustee's name and some were payable to bearer; but the trustee receipted as such for all. Later, securities were transferred and turned over by him to her and were used by her in divers ways. The securities were kept in a safe deposit box, jointly owned and used by the trustee and his wife. A joint bank account received the income from the trust estate and the proceeds of sales of securities forming part of the estate, and upon it checks were drawn for the purchase of other securities, or for individual purposes. With the trust properties kept by the trustee was found the note of his wife, made to him "as trustee under the will of R. M. Shoemaker," etc., in the last year of his life and the year before this action was brought. She had knowledge of the trust and that she acknowledged it, and her liability to it, is shown by her note. The provision in the note was to

pay it "on the day following my decease." It was not only a valid note, (*Carnwright* v. *Gray*, 127 N. Y. 99); but it impliedly, bound her representatives to acknowledge the trust. She had so intermeddled with the possession, management and disposition of the trust estate as to come under a like liability with the trustee, with respect to what she had taken into her own possession. Not having acted in hostility to, or in fraud of, the trust, she may be said to have constituted herself by her acts a trustee *de son tort* of the trust properties. (See Perry on Trusts, sec. 245.) That is to say, there had been such a voluntary assumption of responsibilities by her with respect to the trust estate, or to a part thereof, as to estop her, and the representatives of her estate, from denying an equal and continuous accountability with the trustee, when called upon by those entitled to assert claims to the estate. She will be presumed, as the life beneficiary of the trust, to have received the trust property for trust purposes and for the ultimate benefit of the remaindermen, her children.

A question arose as to the admissibility of a written memorandum, or statement, prepared by, or for, the trustee and indorsed "Inventory etc. In re will of R. M. Shoemaker, deceased." The document was, in some parts, in his handwriting, was unsigned and appears to have been made in 1899, the last year of his life. It was a statement, among other things, of the property received by him, of what was on hand and of what had been substituted for that which had been converted. As the paper included securities which stood in Mrs. Putnam's name, and which are claimed to have become hers, it would, if competent as evidence, tend to prove that all the securities enumerated therein belonged to the trust. The effort of the plaintiff was to trace the trust estate, in its mutations at the hands of the trustee and of the life beneficiary, who had been permitted to dispose of it, and the document in question would go far in aid of that effort. Upon this trial, it was received in evidence, only, as against the estate of John R. Putnam, the trustee, upon the authority of a previous

decision by the Appellate Division, which had reversed an earlier judgment for error in its general admission. There is no evidence that Mrs. Putnam ever saw, or had knowledge of, the paper and, therefore, it was incompetent as evidence to establish a liability against her estate. To be binding upon her, it was necessary to make it appear that, in some way, she had acquiesced in it as an "inventory," or other memorandum, of the securities constituting the trust estate. As a declaration against his interest, it was admissible as evidence against the trustee's estate; but, with reference to Mrs. Putnam's estate, it was nothing more than hearsay evidence.

I think, upon these legal questions, which I have discussed, that we should have no difficulty in finding ourselves in accord with the views of the Appellate Division. Nor, indeed, would it be difficult for us to agree with their views of the facts of the case, if they were before us in a way open to our consideration.

As it is, for the error committed in the disposition of the appeal from the original judgment by the Appellate Division, the order and judgment of that court should be reversed and a new trial ordered; costs to abide the final award of costs.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; CHASE, J., not sitting.

Ordered accordingly.