Robert B. Gillies, Appellant, *v.* Gertrude Gillies and Others, Respondents.
Robert B. Gillies, Appellant, *v.* Gertrude Gillies, as Executrix, etc., of Leslie P. Gillies, Deceased, Respondent.
(Consolidated Actions.)

Second Department, December 22, 1933.

*Oliver K. King*, for the appellant.

*Jacob J. Aronson* [*Henry L. Schaefer* and *Jacob P. Aronson* with him on the brief], for the respondent Gertrude Gillies.

*Henry R. Barrett*, for the respondent Edith M. G. Wheeler, individually and as trustee.

DAVIS, J.   Annie L. Gillies had three adult children for whom she desired to provide.   She chose not to make provision by a will, but on March 11, 1916, executed with them an instrument called an agreement.   One expressed purpose was to avoid future controversy over the disposition of her property.   She recognized that her son Robert was not entirely responsible in a business way to conserve money coming into his hands; but she had confidence in the other two children, Edith and Leslie.   She conveyed all her property to them shortly prior to the agreement.   It seems to be agreed that the conveyances were a part of the agreement. She reserved the income to herself for life.   After making certain deductions from the corpus for her daughter and providing a small annuity for a stranger, the remaining amount was divided into three parts.   These provisions were to become operative after her death.

The part with which we are concerned is that one-third part relating to Robert.   It was provided, in brief, that he should receive the income therefrom during his life, to be paid by the other two children, to whom the property had been conveyed. Robert on his part agreed to accept this provision as his part of his mother's estate and to make no contest after her death.

It is difficult to denominate this " agreement."   Without reciting its provisions fully, it is sufficient to say that it contains elements of a will, a gift, a contract and a trust.   During the mother's lifetime the property was sold by the two children, the sums received were invested in securities, and the income paid to her by them. After the mother's death and after payment of the funeral expenses and other charges without administration, Robert was paid by the brother and sister the income in an amount stated by them for a period of years until the death of his brother.   The securities representing his one-third had been divided between the brother and sister and each paid to him one-half of the income.   In the case of Leslie it appears that the securities representing Robert's share had been segregated from his other assets.   There seems to have been a recognition by both that this one-third was distinct from their own shares.   After Leslie died, his widow and executrix, defendant Gertrude Gillies, made one further payment and then the income due from the securities which had been in Leslie's hands stopped.   There is evidence that Gertrude Gillies managed her husband's affairs during the long illness preceding his death; that she had knowledge of this " agreement " and the property held under it, and remitted certain regular payments of income to Robert.   The sister, Edith, continued to pay one-half of the income up to the time of the trial.

The plaintiff brought these actions (now consolidated) for an accounting and for the appointment of a new trustee on the theory that the instrument was a trust. He has met with ill success, it being determined that the instrument was a simple contract. Since the entry of the judgment, we are informed by the brief of counsel, the sister has recognized the trust as to the funds in her hands and entered into a settlement with the beneficiary. That matter does not now concern us. She (or the plaintiff) is at liberty to apply at Special Term for severance and discontinuance.

In determining the nature of the instrument, the important element is the intention of the mother at the time of its execution. If her purpose was to create a trust for the benefit of her son and avoid future controversy, mere informality or even some obscurity in the language used will not be permitted to defeat such intent. In the instrument itself, particularly in the light of the circumstances surrounding its execution and notwithstanding its obscure and informal language, we discover the intent of the mother to create a trust for the benefit of her son. It contained the essential elements of a trust and should be so construed. There was a known fund, capable of identification, dedicated to trust purposes and delivered to designated persons, with a named beneficiary to whom the income was payable. The fact that the words " trust " and " trustee " were not used is not of great importance if it is reasonably clear that trust duties were created. (*Putnam* v. *Lincoln Safe Deposit Co.*, 191 N. Y. 166, 182; *Morse* v. *Morse*, 85 id. 53, 60; *Brown* v. *Spohr*, 180 id. 201; *Close* v. *Farmers' L. & T. Co.*, 195 id. 92; *Matter of Carpenter*, 131 id. 86.) It is unlikely that the mother intended that Robert's share should be used by the others as their own, perhaps to become dissipated, leaving him to rely on their bounty or charity. This definite part of her property was apparently, in her mind, dedicated to his support.

The acts and letters of the sister and brother, to whom were given trust duties, indicate that they construed the instrument as representing the intent to provide in a definite way for the payment of income to their brother; and that they assumed such duties for the period of years in which they paid the income to the beneficiary. The fact that for their own convenience (with the beneficiary assenting) they divided the fund into equal parts, over which each exercised separate control, could not and did not change the nature of the estate or in any respect lessen their obligation. Each incurred a greater duty of accounting for that part within his immediate control, without impairment of their joint responsibility.

At the death of one of the trustees, Leslie, the funds of the trust,

once kept separate, evidently came into the hands of his widow, Gertrude Gillies, individually and as executrix. There is some indication that this fund had been used by the husband and wife for purposes of speculation. At any rate, the income is not being paid and the widow and executrix is resisting the attempt to discover the reason and the status of the fund. She had earlier recognized the claims of the beneficiary by promising to make payments thereon, and by sending him the monthly income on one occasion after her husband's death. She now owes the duty of accounting for both principal and income. (*Putnam* v. *Lincoln Safe Deposit Co.*, *supra; Blair* v. *Hill*, 50 App. Div. 33; affd., 165 N. Y. 672; Perry Trusts & Trustees [7th ed.], vol. 1, § 245.) We do not by this decision fix liability on defendant Gertrude Gillies individually or as executrix. We hold that on this record it appears that she had knowledge of the trust fund, apparently exercised some control over it, intermeddled with it, and must account. On the accounting she may be able to show that the fund did not in fact, either in whole or in part, come into her possession, and may thereby escape liability. That is a matter of future proof.

The parts of the judgment from which appeal is taken should be reversed on the law and the facts, with costs, and the matter remitted to Special Term to proceed with the accounting or otherwise, as the parties may be advised, and to render judgment as to the rights of the parties on said accounting.

LAZANSKY, P. J., YOUNG, HAGARTY and TOMPKINS, JJ., concur.

The parts of the judgment from which appeal is taken are reversed on the law and the facts, with costs in this court, and the matter remitted to Special Term to proceed with the accounting or otherwise, as the parties may be advised; and to render judgment as to the rights of the parties on said accounting. All findings of fact inconsistent herewith are reversed and the conclusions of law disapproved, and new findings and conclusions of law will be made. Settle findings on notice.