OPINION OF THE COURT
Richard C. Giardino, S.
This matter comes before the court on the petition of the sue *68 cessor trustee, who was appointed to that office by order of this court dated July 18, 2002. The petition is captioned in the form of a request to determine the validity of competing claims to trust benefits, pursuant to SCPA 1809. However, the relief sought in the petition also invokes SCPA 2107 (2) (Advice and Direction), which allows a court to advise and direct a fiduciary in “extraordinary circumstances.” An extraordinary circumstance apparent from the face of the petition is also the source of the competing claims described by petitioner. Copies of two trust agreements are annexed to the petition. The instruments are dated the same day and executed by the same settlor. They contain very similar, but not identical provisions, so that petitioner’s duty to make payments to the various named beneficiaries is different under each instrument.
Petitioner thus seeks this court’s advice and direction in order to determine the validity of the competing claims under these two instruments. He also seeks to be relieved of any duty he may have to proceed against his predecessor trustees for what he terms “acts and omissions of nonfeasance and malfeasance against the Trust and its beneficiaries.” The Attorney General has filed an answer to the petition on behalf of three charitable entities named as the ultimate recipients of the trust principal after several lifetime income interests are extinguished. The Attorney General’s answer denies some of the allegations of fact contained in the petition. However, he ultimately consents to the relief sought in the petition in toto. The remaining interested parties either have executed waivers of appearance that consent to the relief sought in the petition or have defaulted in appearing. Before reaching the merits of petitioner’s requests, however, the somewhat sketchy state of the facts surrounding the purported trust merits some examination to ensure that there is a valid trust in existence.
A. Is There a Valid Trust?
1, Petitioner’s Appointment. This proceeding has its origin in an application by the Attorney General to have petitioner appointed as successor trustee. The application recited the presence of both trust instruments at issue, as well as the death in November 2000, of the person who appeared likely to be the sole surviving trustee. Under these facts, no person had authority to administer the trust principal, which consisted of a bank account established on October 5, 1993, at the City National Bank and Trust Company of Gloversville, New York, under the name “William Kline Revocable Trust Under Agreement Dated 9/30/71.”
*69 Both EPTL 7-2.3 and SCPA 1502 empower a Surrogate’s Court to appoint a successor trustee in situations where it appears necessary for the administration or distribution of the trust. The need for a successor trustee in this case was apparent from the face of the Attorney General’s application, even if the only purpose to be served was granting someone the authority to liquidate the purported trust bank account. However, a court making such an appointment does not look at the validity of the trust, and an order appointing a successor trustee is not res judicata of that question (Matter of Landmesser, 101 App Div 110 [1905]; Matter of Mayne, 98 App Div 171 [1904]).
Both the Attorney General’s original application and the petition now at bar note the presence of open questions, not only as to the clarity of the directions given to the trustee, but as to the very presence of a valid trust. Indeed, the Attorney General’s application asked that the successor trustee investigate the circumstances surrounding the two existing trust instruments. Petitioner’s subsequent conduct of such an investigation has resulted in the petition now before this court.
2. Evidence of Requisite Trust Elements. Three basic elements are required for a valid trust: a designated beneficiary, a clearly identifiable trust principal, and actual delivery of the trust principal to the trustee with the intention of passing legal title (Matter of Gold, 2002 NY Slip Op 40383 [U]; Matter of Fontanella, 33 AD2d 29 [1969]). The evidence of the purported trust placed before this court consists of two trust agreements dated September 30, 1971, a bank account that references a trust agreement of that same date, the sworn statements contained in the affidavit of one William H. Palmateer, and the allegations in the verified pleadings submitted by petitioner and the Attorney General.
A reading of the two trust instruments reveals that both specifically designate beneficiaries of the various income and residuary interests created. Both agreements also specifically state that the settlor has transferred and delivered to the named trustees the property described in an attached “Schedule A,” the receipt of which is acknowledged by the trustees. Two necessary trust elements are thus found on the face of each trust agreement. The third element requires further inquiry, however, because only one of the trust agreements actually includes a Schedule A that identifies the trust property.
The two trust agreements have been designated “Trust A” and “Trust B” by the parties for ease of reference. Trust A *70 contains the original signatures of the settlor and the named trustees, but it also contains ambiguities discussed in greater detail below and does not include the Schedule A referenced in its text. Whether it ever had such a schedule is a matter of speculation. By failing to identify the trust principal, Trust A omits an essential element of a valid trust. The bank account which references a trust agreement of the appropriate date certainly provides strong evidence of trust property, but without any description of trust property in Trust A, there remains some question as to the origin of the funds, and indeed, whether there may exist other trust property not currently known to petitioner.
3. The Best Evidence Rule. Trust B does include a Schedule A, but it may not be useful for supplying a clear description of the trust property, because it is a photocopy and not an original document. Neither petitioner nor the Attorney General have been able to locate the original of Trust B, leaving a photocopy as the only means available for proving its terms. Petitioner anticipates the problem presented by this fact, and addresses the best evidence rule in the petition. As stated by the Court of Appeals, “the ‘oft-mentioned and much misunderstood’ best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven.” (Schozer v William Penn Life Ins. Co., 84 NY2d 639, 643 [1994] [citations omitted].) One exception to this rule has gained such long-standing recognition that the rule itself is often stated another way, i.e., the party which seeks to prove the contents of a document must either produce the document itself or account satisfactorily for its absence (id. at 644; Taft v Little, 178 NY 127 [1904]; Prince, Richardson on Evidence § 10-101 [Farrell 11th ed]). Petitioner seeks to account for the absence of the original of Trust B by submitting the affidavit of Mr. Palmateer.
Mr. Palmateer is a named beneficiary in both trust agreements and a named executor in the settlor’s will. He states that he has maintained a large file concerning the affairs of the Kline estate, including the William M. Kline Revocable Trust, and to the best of his knowledge, he once had the original of Trust B in that file. Indeed, he was under the initial impression that the copy of Trust B presented to this court was made from the original of that document in his file. However, for reasons Mr. Palmateer is unable to explain, he cannot now find the original of Trust B.
Several factors weigh in favor of holding this explanation to be satisfactory and allowing the copy of Trust B into *71 evidence. As the settlor’s nephew and an executor named in his will, Mr. Palmateer is in a logical position to have had possession of important records. While Palmateer is an income beneficiary under both trust agreements, he would appear to lack any motive for preferring one agreement over the other, and he also appears unaware of the potentially fatal nature of the defect in Trust A. Palmateer’s fact recitation is also consistent with the Attorney General’s application for appointment of a successor trustee, which details the attempts by that office to locate the original of Trust B through inquiry of several attorneys and other individuals involved in the settlor’s estate planning activities, including Palmateer. The terms of Trust B are complete and logical, and they substantially carry forward the wishes expressed in Trust A.
The presence of the bank account bears upon this question, as well. The Attorney General’s application for appointment of a successor trustee alleges (upon information and belief, but after investigation nonetheless) that the funds in that account were derived from the sale of 1,800,000 shares of stock in a corporation called “Medical Evaluation Devices and Instruments Corp.” That stock is the property described on the Schedule A annexed to Trust B. The Attorney General characterizes the circumstances of the sale of that stock as “unclear,” yet the presence of an additional link between the account and the trust instruments strengthens the evidence of an action taken in accordance with the terms of those instruments, so that the settlor’s intention to create a trust is apparent (see, e.g., Rice v Halsey, 156 App Div 802 [1913]).
4. A Valid Trust is Established. In sum, while the evidence of the trust is not compelling, it presents all of the requisite elements of a trust and it is uncontroverted by any party in interest. The trust documents themselves are somewhat flawed and the bank account which references them contains funds of unclear origin. However, taken together with the recitations from the parties, they show designated beneficiaries, identified trust property, delivery of that property, and most importantly, the settlor’s intention to create a trust (Matter of Kellogg, 55 AD2d 215 [1976]). Imperfections not affecting the manifestation of a settlor’s intent, such as informality or even obscurity of language, will not defeat the formation of a valid trust (Gillies v Gillies, 239 App Div 582 [1933]; Matter of Leverich, 135 Misc 774 [1929]). The necessary elements of a single trust being shown by the evidence before this court, and there being no evidence that these two very similar agree *72 ments were intended to function separately as distinct trusts, a valid trust is established.
B. What are the Trust Terms?
A valid trust having been established, petitioner’s request for assistance in observing its terms can be addressed. Petitioner alleges that the presence of two “competing” written trust agreements has placed petitioner in the position of having to choose between competing sets of claims. The dispositive provisions in the two trust agreements are similar, in that both name the same individuals as lifetime income beneficiaries and both name the same charitable remainder interests, namely, the American Cancer Society, the American Heart Association and Union College (now Union University). There are, however, differences in the directions for payment of those beneficiaries. Both petitioner and the Attorney General appear to conclude that these differences do not result from an intention that these two documents are meant to establish separate trusts, or even separate payment schemes, but rather from ambiguities in the language of Trust A that are not present in Trust B.
1. Court Interpretation Requires Ambiguity. It is axiomatic that a court will not undertake interpretation or construction of an agreement unless there exists some ambiguity that requires such action (11 Williston, Contracts § 30:4, at 37 [4th ed 1999]). An ambiguity is simply an uncertainty of meaning or intention (Black’s Law Dictionary 79 [7th ed 1999]). The presence or absence of ambiguity is a question of law to be resolved by the court addressing the document or documents at issue (W.W.W. Assoc. v Giancontieri, 77 NY2d 157 [1990]; Milonas v Public Empl. Relations Bd., 225 AD2d 57 [1996]). This court finds that two basic ambiguities present themselves in Trust A. Both are found in article IV. The first is the lack of direction to the trustees if the individuals named as lifetime income beneficiaries in paragraph A survive the settlor. The second involves the meaning of the word “trust” as used in paragraphs D and E.
Paragraph A instructs the trustees to establish five equal “shares” of the trust estate, and to pay the income from those shares to the individuals named in five corresponding subparagraphs. Subparagraphs 3 and 4 name single individuals, calling upon the trustees to pay income from one share to each of those individuals during their respective lifetimes, and upon the death of each, to distribute the principal of that share according to instructions given in paragraph D. These subparagraphs are straightforward.
*73 Subparagraphs 1, 2 and 5 also begin by naming a single individual, but also include reference to either the children or the grandchildren of each individual. If the first named or “primary” lifetime beneficiary predeceases the settlor, the trustees are instructed to pay the income from that share to the children or grandchildren of the primary beneficiary, as the case may be, and to distribute the principal of that share upon the death of the last survivor of those children or grandchildren. No direction is given to the trustees in the event that the primary lifetime beneficiary survives the settlor. Are the trustees to pay the income to the primary lifetime beneficiary for life, then to the children or grandchildren, and then distribute according to paragraph D? Are they to disregard the children or grandchildren entirely and distribute according to paragraph D upon the death of the primary lifetime beneficiary? Neither course of action is specifically provided for, and either course of action can be inferred from the language of Trust A.
Regardless of the reading given to subparagraphs 1 through 5, the five shares are ultimately to be distributed according to paragraph D. Paragraph D directs the trustees to “hold the principal” of “the trusts hereinbefore provided” and to pay the income to the three charitable entities discussed above. Reading the whole of Trust A up to and including paragraph D, it appears that the term “trust” as it is used in this paragraph refers to the five “shares” of the original trust estate established in paragraph A. These “shares” or “trusts” are “distributed,” and are then to be held by the trustees, with the income from their investment to be paid to the charities. Paragraph D thus appears to create a separate, “continuing” trust. Once again, however, direction to the trustees is omitted. The continuing trust has no provision for its own termination.
This omission creates the second ambiguity when the reader continues to paragraph E, which provides that “one year from the date when the last trust herein created shall terminate,” the trustees are to distribute the remaining principal directly to the charities. The last trust created by Trust A is the continuing trust, from which the trustees are to pay income to the charities and which has no direction as to its termination. Without reading into Trust A some direction that the word “trust” in this instance means only the first five “shares” created in paragraph A, there is no triggering event for the distribution of principal to the charities.
By comparison, Trust B is the more clearly written instrument. While Trust A is ambiguous as to whether the *74 children or grandchildren of some of the lifetime income beneficiaries are also entitled to receive trust income, the answer is clearly in the affirmative under Trust B. For example, subparagraph 1 states: “Upon the death of Grantor’s sister, E. Jane Warner, or if she shall not survive the Grantor,” the income from her share is to be paid to her grandchildren during their lives. Subparagraphs 2 and 5 are similarly worded. The second ambiguity in Trust A, dealing with the definition of “trust” and how it affects the income interest granted to the charities, is also avoided in Trust B. While the words “share” and “trust” are still used somewhat interchangeably, paragraph D of Trust B omits the provision for payment of income to the charities. Instead, the principal of each share is paid to the charities upon the termination of the last life income interest in each of the five shares. There is thus no question of the formation or termination of a continuing trust.
Petitioner’s dilemma is evident. He is faced with two documents with differing payment provisions, one of which is ambiguous within its own terms. Some assistance by the court is thus necessary. When construing any trust instrument, the goal is to ascertain the settlor’s intention in creating the trust. The expression of that intention in the words of the trust instrument is the paramount consideration (Matter of Kellogg, 35 AD2d 145 [1970]; Matter of Hooker, 233 NYS2d 947 [1962]). Where that intent cannot be divined clearly from the face of the document, the words used must be construed against the background of the surrounding circumstances at the time the trust instrument was executed (Matter of Upjohn, 304 NY 366 [1952]; Matter of Ricks, 12 AD2d 395 [1961]).
2. The Parol Evidence Rule. In undertaking such interpretation, the court must remain mindful of the parol evidence rule. The evidence of surrounding circumstances may be used to explain or clarify the terms of the trust instrument, but not to contradict them. Moreover, the surrounding circumstances cannot be used to establish an ambiguity in a trust instrument where none exists on the face of the agreement (see, e.g., Milonas v Public Empl. Relations Bd., supra; Prince, Richardson on Evidence § 11-101 et seq. [Farrell 11th ed]).
Both the instant petition and the Attorney General’s earlier application for appointment of a successor trustee state with candor that these parties’ attempts to investigate the circumstances surrounding the execution of the two trust instruments met with little success. The deaths of several of the principal actors in this process, and the effect of the passage of nearly 32 *75 years on the memory of the surviving actors, have left the parties with little to offer to the court. Petitioner therefore advances Trust B as the best guide to the intent of the settlor, even though the copy provided to the court is “secondary” evidence.
Trust B indeed appears to be a logical choice. As set forth above, it is admissible evidence of the trust at issue, even though it is a photocopy. It is consistent with the terms of Trust A, except in ways which actually clarify ambiguities found in Trust A. It is also the more complete document, in that it contains all of the elements of a valid trust. The terms of Trust B also provide for the early vesting of all interests created in it, rather than making those interests contingent upon other events. As pointed out by petitioner, this is favored in the law (Matter of Wissman, 38 Misc 2d 39 [1963]).
3. The Terms of Trust B Will Govern Administration. It is also worth noting that the only interests prejudiced by the use of Trust B for guidance are those of the charities, who arguably receive the ultimate disbursement of the trust principal at a later date under the terms of Trust B than they would under at least one reading of Trust A. The Attorney General states in his answer that the benefits of using Trust B outweigh that detriment, so that charities do not object to the use of Trust B. Given all of the above considerations, this court holds that petitioner is to discharge his duties according to the terms of Trust B.
C. Petitioner’s Duty to Seek Accounting From His Predecessors.
Petitioner also seeks the court’s direction that he not be required to commence an accounting proceeding against his predecessors. Petitioner recites the failure of one or more of his predecessors to invest the trust principal other than placing it in the bank account discussed above, which bears interest at what he terms the “meager” rate of 2.25%. He also points out the lack of any payment to income beneficiaries. Petitioner thus sees grounds to seek a compulsory accounting, and potentially, a surcharge against his predecessors. However, he also expresses practical reservations about expending trust assets in such a pursuit, since in his view, the chances for recovery are slight.
A successor trustee is only responsible for the assets which come into his hands, and has no particular legal duty to seek an accounting from his predecessors (Pfeffer v Lehman, 255 App Div 220 [1938]; Matter of Ketcham, 124 NYS2d 895 [1953]). *76 At the same time, New York courts have cited with favor the position espoused in the Restatement of Trusts that a successor trustee can be held liable for failure to proceed against his predecessors for their breach of trust (see, e.g., Bank of N.Y. v New Jersey Tit. Guar. & Trust Co., 256 App Div 609 [1939]). Petitioner thus appears to have a legitimate concern. The lack of payment to the income beneficiaries contravenes the trust’s terms and the apparent lack of any investment strategy raises a question as to the prior trustees’ prudence in managing trust assets.
The language of SCPA 2107 (2) requires a court to exercise discretion in deciding to grant or withhold its advice and direction by stating that the court “need not entertain jurisdiction if to do so would be merely to substitute [its] judgment for that of the fiduciary” (see, e.g., 4 Warren’s Heaton, Surrogates’ Courts § 67.10 [3] [6th ed rev]; Tur ano and Radigan, New York Estate Administration § 12.06 [2003]). As a result, courts frequently decline requests for advice and direction, particularly where the fiduciary is specifically empowered to make the decision at issue (see, e.g., Estate of Tompkins, NYLJ, Jan. 29, 1999, at 34, col 1 [it is for executor to decide whether asset should be abandoned as worthless]; Matter of Ebbets, 139 Misc 250 [1931] [it is for trustees to decide how to vote shares of stock held by trust]).
In the case at bar, petitioner has asked this court two basic questions. The first, dealing with how he should interpret his duties under the two trust instruments, presented truly extraordinary circumstances such as those contemplated by SCPA 2107. The question of pursuing petitioner’s predecessors, however, calls for an exercise of judgment that petitioner is empowered to make. Petitioner is empowered by statute to “contest, compromise or otherwise settle” claims in favor of the trust (EPTL 11-1.1 [b] [13]), a process which involves the exercise of discretion and judgment. Petitioner has outlined the acts and omissions preceding his tenure which could give rise to a claim, but he has also stated why he thinks pursuit of such a claim would not be in the overall best interests of the trust. It is not for this court to stamp its imprimatur on a course of action which is petitioner’s to choose. Indeed, the interested parties have either expressly or tacitly agreed with petitioner’s viewpoint, by executing waiver-and-consent forms or by defaulting upon this petition.
Given all of the foregoing, it is therefore ordered that the petition of the successor trustee is granted to the extent that this *77 court directs him to administer the trust estate according to the terms of the document referred to in the pleadings as “Trust B”; and it is further ordered that the successor trustee’s request that this court direct his actions concerning any possible claims which may lie against his predecessors is denied; and it is further ordered that the successor trustee’s request, on behalf of the law firm of Wood and Seward, for a legal fee of $6,500 is granted.